UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| LORELL LAIR DEL-RIO, | ) | No. SA CV 07-00551-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.  After reviewing the matter, the Court

concludes that the decision of the Commissioner must be affirmed.

The chronological history indicates that Plaintiff filed her application for Social Security disability on June 5, 2005, alleging an onset date of April 1, 1998. (AR 57.)  The matter proceeded to a hearing before an Administrative Law Judge ("ALJ") on March 26, 2003, which resulted in an unfavorable decision.  Ultimately, Plaintiff filed a complaint in the United States District Court for the Central District of California, which was handled by the undersigned in Case No. SA CV 04-01197-VBK.  This Court remanded the matter to the Social Security Administration ("SSA") for a new hearing.  That hearing was held on March 14, 2006. (AR 355-367.)  In a subsequent decision, the ALJ again found Plaintiff to be not disabled. (AR 260-266.)  The matter is again before the Court following the Plaintiff's filing of a new complaint seeking review of this subsequent decision.

The Court incorporates the matters set forth in its prior Memorandum Opinion and Order in Case No. SA CV 04-01197-VBK.

Plaintiff asserts that the ALJ did not follow this Court's Order to reevaluate certain evidence and opinions in the record.  In the second issue, Plaintiff asserts that the ALJ improperly discredited her credibility.

In his original decision (AR 17-24), the ALJ discussed and rejected the opinion contained in a letter from Dr. Haislett. (AR 191-194.)  Dr. Haislett's contribution to the record consists of a March 22, 2003 letter entitled, "Treatment Summary for Lorell Lair-Del Rio" (AR 191), and a "Mental Assessment" check-off form (AR 192-194).  In his original decision, the ALJ rejected Dr. Haislett's conclusions for several reasons.  One of those reasons, as the Court noted in its Memorandum Decision in Case No. SA CV 04-01197-VBK, had to do with an

asserted contradiction between the ALJ's interpretation that Plaintiff had testified in the original hearing that she stopped working in 1994 and lived on residuals after that date, with Dr. Haislett's notes which indicate that she treated Plaintiff in 1995 to 1996, when Plaintiff was working.  The ALJ indicated that this inconsistency raised one of two possible inferences: that Plaintiff was not candid with Dr. Haislett regarding her work status, or that Dr. Haislett's recollection of the case was impaired.  The Court rejected this basis for the ALJ's discounting or discrediting of Dr. Haislett's opinion because, as the Court noted, the apparent contradiction was either non-existent or de minimus.

Plaintiff now asserts that the ALJ again improperly disregarded Dr. Haislett's opinion, and failed to comply with this Court's remand order.  But the Court does not agree.  As the ALJ indicated in his second decision, he contacted Dr. Haislett "to solicit the basis for her conclusion and any medical records." (AR 262.)  Dr. Haislett responded that her records had been destroyed, but that she was familiar with the case, having used it as a basis for presentation at workshops. (Id.)  The ALJ found Dr. Haislett's opinion to be unsupported by any diagnosis or other objective evidence. Indeed, Dr. Haislett was unable to supply any workshop records which would indicate some diagnostic basis, or other objective evidence for her conclusions.  As the Court noted in its original Memorandum Opinion, lack of treatment records is a valid consideration in determining how much credibility to accord a medical opinion.  Here, there are no treatment records, no discussion of any diagnostic evaluation, or anything of an objective nature which would tend to support Dr. Haislett's after-the-fact opinion.  The fact that Dr. Haislett's

3

conclusions were rendered in March of 2003, relating to the period 1995 to 1996, cannot be ignored in evaluating the reliability or credibility of the opinion.

The Commissioner correctly notes that it is Plaintiff's burden to prove her disability prior to her date last insured ("DLI"). (See JS at 15, citing Armstrong v. Commissioner of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998).)  Moreover, Ninth Circuit cases on this issue consistently hold that the absence of objective evidence is a critical flaw which may well undermine a medical conclusion.  The Ninth Circuit has specifically upheld rejection by ALJs of so-called "check-off" reports which fail to contain any indication of the objective evidence supporting those conclusions.  See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996).  Generally, the ALJ is vested with the discretion to reject an opinion of a physician which is "brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  Here, Dr. Haislett's brief "Treatment Summary" for Plaintiff, written in 2003, largely recapitulates Plaintiff's subject reporting rather than recounting any objective testing or examination.  The only objective assessment contained in Dr. Haislett's Treatment Summary is her notation that Plaintiff's Global Assessment of Functioning ("GAF") score was 40 at the time of termination (AR 191); however, the GAF scale is intended to reflect a person's overall level of functioning at or about the time of the examination, not for a period of at least 12 consecutive months, which is required for a finding of impairment or disability. (See 20 C.F.R. §§416.905, 416.920(c)(2006).)  GAF scores are intended to be used for clinical diagnosis and treatment, and do not directly correlate to the

4

severity assessment set forth in Social Security regulations. (See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), and American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 33 (4th Ed. 2000).

In sum, the ALJ on remand did exactly what the Court ordered; that is, re-contacted Dr. Haislett, sought treatment records, and reevaluated Dr. Haislett's opinion according to appropriate standards.

In its prior Memorandum Opinion in Case No. SA CV 04-01197-VBK, the Court also ordered the ALJ to reevaluate the opinion of Dr. Kendall (AR at 195-197). The ALJ did exactly that. Dr. Kendall did not respond to the ALJ's overtures. (AR 263.) Further, the ALJ more carefully evaluated Dr. Kendall's letters. Indeed the Court agrees that Dr. Kendall did not have a treatment or therapeutic relationship with Plaintiff. As Dr. Kendall indicated in her letter of May 18, 2000, directed to the Department of Children's Services,

> "Noah [Plaintiff's son] and his mother [Plaintiff] were seen at the Glen Roberts Center for a total of six months, from June 1999 to December 1999. During that time I worked with Noah and both his individual therapist and family therapist. In addition I worked with [Plaintiff] individually on parenting issues and techniques as well as coordinated with DCFS Pasadena regarding their compliance with DCFS requests."

(AR 197.)

Dr. Kendall's statements do not constitute a diagnosis, but merely an observation or description of apparent symptoms. (AR 195-

196, 262.)  These statements do not constitute a "medical opinion" which is recognized for diagnostic or evaluative purposes in the Social Security context. (See 20 C.F.R. §404.1527 (2007).)

Moreover, the ALJ noted, in his subsequent decision, that there is, indeed, evidence to doubt Plaintiff's claim that she discontinued mental health services because of financial inability.  In its original decision in Case No. SA CV 04-01197-VBK, the Court noted that there is no evidence contradicting Plaintiff's claim; however, as the ALJ later noted, Dr. Kendall reported that during the period that she worked with Plaintiff and her son, which was within the insured period, Plaintiff was on AFDC. (See AR 195, 262.)  Thus, the ALJ noted that,

> "... treatment was available to the [Plaintiff], notwithstanding her claim to the District Court that she could not afford medical care.  She refused offered services.  These offered services were treatment and medication."

(AR 262.)

In the JS, Plaintiff concedes that she had access to Medical, but argues that this "does not mean that she had access to all necessary treatments." (JS at 21.)  The Court finds that contention to be simply at odds with the record.  Indeed, it appears that Plaintiff simply refused Dr. Kendall's suggestion of referral for psychiatric consultation, and refused medication. (AR 196.)  Dr. Kendall required Plaintiff to call a clinic during a session to insure an appointment was made, but notes that Plaintiff did not keep that appointment. (AR 196.)

1    Based upon this reevaluation of evidence in the record, the Court
2 can no longer conclude that there is no evidence refuting Plaintiff's
3 claim that she ceased obtaining these medical services because of
4 financial inability to pay.
5    The parties also discuss the records of Dr. Gorlick, who wrote
6 letters dated November 8, 2001 and February 22, 2006. (AR 151-152,
7 322-323.)  The treatment notes provided by Dr. Gorlick begin in 2001,
8 a period after Plaintiff's DLI. (AR 263, 324-344.)  But, the Court
9 must agree with the ALJ that while Dr. Gorlick makes references to
10 various psychiatric problems, and he may have provided Plaintiff with
11 samples of psychiatric medications, he does not provide an objective
12 diagnostic opinion, even for the post-DLI period.  There is no
13 indication that he reviewed any medical or treatment records prior to
14 the DLI.  Rather, it would appear that he depended upon Plaintiff's
15 own self-reporting.  The Court agrees with the ALJ that Dr. Gorlick's
16 post-DLI information does not provide substantial evidence of
17 disability in the pre-DLI period. (See AR at 263.)
18    Finally, the ALJ also considered the post-DLI Orange County
19 health care records from 2006. (AR 264, 345-353.)  These records do
20 establish that Plaintiff repeatedly seemed to refuse treatment. (See
21 AR at 264, 346.)
22    For the foregoing reasons, the Court finds that the ALJ did
23 follow this Court's Order in Case No. SA CV 04-01197-VBK to reevaluate
24 the medical assessments in the record and post-DLI evidence, and came
25 to the correct conclusion that Plaintiff had not established that she

1 suffered from a disabling impairment.[1]

2 Plaintiff also contends that the ALJ did not properly assess her
3 credibility.

4 The ALJ's determination of Plaintiff's credibility is found at AR
5 264. The Court will examine the sufficiency of the credibility
6 assessment pursuant to the familiar standard set forth in case law.
7 See Bunnell v. Sullivan, 947 F.2d 341, 345-346 (9th Cir. 1991), en
8 banc. The credibility factors, also set forth in regulation in 20
9 C.F.R. §404.1529 (2007), are specific.

10 Here, the ALJ found that Plaintiff's pre-DLI complaints of
11 disabling symptoms were not substantiated by the medical evidence.
12 This is one factor which may be considered in the credibility
13 assessment. See Rollins v. Massanari, 261 F.3d 853, 856-857 (9th Cir.

---

[1] While the Court agrees with the ALJ concerning the ultimate conclusion reached, and the manner in which it was reached, what is troubling is the ALJ's apparent rejection of the clear direction provided by the Ninth Circuit in Smith v. Bowen 849 F.2d 1222 (9th Cir. 1988). The Court notes a peripheral discussion in the ALJ's decision (see AR at 263) that Smith v. Bowen would have applicability in a situation involving continuing treatment, but otherwise, that the decision "has no real applicability." (Id.) This is an unfortunate misreading of the decision of the Ninth Circuit, which clearly set forth the general principle of law that post-DLI medical evidence is relevant and should be examined to determine the question of disability during an insured period. In making its decision, the Ninth Circuit extensively discussed a series of decisions from the Eighth, Eleventh, Fourth, Second, and Seventh Circuits which support that conclusion. The rule thus enunciated is clearly not limited in the manner suggested by the ALJ. This misunderstanding is somewhat troubling to the Court, in that an improper rejection of post-DLI evidence supplies fertile ground for the seed of reversal and remand to grow and flourish. More importantly, such a misapplication of this clear rule of law can lead to an unnecessary expenditure of both administrative and judicial resources in correcting such error. For the reason, the Court **DIRECTS** that a copy of this decision be provided to the ALJ in the hope that there will not be a future misinterpretation of the clear rule of law set forth in Smith v. Bowen.

2001). Here, the ALJ did not find objective medical evidence substantiating disability during the insured period, and the Court has, in this Memorandum Opinion, upheld that finding.

Further, the fact that Plaintiff on several occasions appears to have refused medical treatment and medication does cast doubt on her credibility, as the ALJ suggested. As the Court noted, the record does support the ALJ's finding that Plaintiff refused Dr. Kendall's suggestions to be referred for treatment and medication. Similarly, in the context of the post-DLI framework, there is evidence that in 2006 Plaintiff failed to undergo required laboratory testing. (AR 264, 346.)

The ALJ also considered other post-DLI evidence, including daily activity questionnaire forms completed by Plaintiff and her mother in November and December 2001. (AR 264, 101-106, 107-112.) The indications in those reports that Plaintiff was able to care for her child and her pet, and that she did substantial household activities, visited the library, read law books, and the like (AR 102-104) indicate a contradiction with Plaintiff's own reporting of her functional disabilities, and as such, this evidence was properly considered by the ALJ.

Thus, the Court declines to overturn the ALJ's credibility assessment, and finds that it was based on substantial evidence.

For the foregoing reasons, the decision of the ALJ will be affirmed.

**IT IS SO ORDERED**.

DATED: February 26, 2008              /s/
                                VICTOR B. KENTON
                                UNITED STATES MAGISTRATE JUDGE